**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melanie Beauchamp,<br><br>    Plaintiff,<br><br>v.<br><br>Mary Kate Flaherty,<br><br>    Defendant. | No. CV-24-01160-PHX-DWL<br><br>**ORDER** |

In this action, Plaintiff Melanie Beauchamp ("Plaintiff"), a former attorney who is proceeding *pro se*, asserts various tort claims against Defendant Mary Kate Flaherty ("Defendant"), a Massachusetts resident who has "never set foot in Arizona." (Doc. 7 at 2.) In an October 11, 2024 order, the Court dismissed Plaintiff's claims for lack of personal jurisdiction but also granted Plaintiff leave to amend. (*Id.*)

Plaintiff has now filed an amended pleading, the First Amended Complaint ("FAC"), and Defendant has again moved to dismiss for lack of personal jurisdiction. (Doc. 9.) For the reasons that follow, the motion to dismiss is again granted, this time without leave to amend.

**BACKGROUND**

I.   Factual Allegations

As alleged in the FAC, Plaintiff sells cosmetic products and resides in Arizona. (Doc. 8 ¶¶ 1, 10.) Defendant is a social media influencer. (*Id.* ¶ 4.)[1]

---

[1] Because Plaintiff did not provide a redlined FAC and instead included bullet points that purport to "amend" certain paragraphs of the original complaint, it is not always clear

On or about January 11, 2024, "Defendant contacted Plaintiff via text message . . . requesting samples of Plaintiff's skincare products for promotional purposes, knowing that Plaintiff's business, UluRX, is based in Arizona." (*Id.*) The parties' relationship continued until roughly March 26, 2024, when, "during a TikTok livestream, Defendant made false and defamatory statements about Plaintiff's business practices." (*Id.* ¶ 8.) "[D]uring this live stream Defendant expressly aimed at Plaintiff's Arizona business and [was] critical of plaintiff's business practices, customer service, and return policies, and she suggested that her followers take actions that could harm the plaintiff's business." (*Id.*) Following this, "Defendant and her agents opened fake accounts on TikTok, to disparage, defame and harass. Defendant and her agents began disparaging the products by, for example, alleging that the pharmacy was not real amongst other falsities that included both libel and slander." (*Id.* ¶ 11.) This "campaign of disparagement . . . is ongoing and continues to the date of the filing of this Complaint." (*Id.* ¶ 10.) "Defendant's actions caused incalculable damage to Plaintiff's reputation, inhibiting her ability to sustain her online marketing efforts, which were crucial for generating income. This resulted in a significant loss of projected and anticipatory revenue, as evidenced by Refunds and sudden revenue decline." (*Id.* ¶ 24.)

Based on these allegations, the FAC asserts tort claims against Defendant for (1) false light, (2) defamation, (3) business disparagement, and (4) intentional and negligent infliction of emotional distress. (*Id.* ¶¶ 32-38.)

II. Procedural History

On April 1, 2024, Plaintiff commenced this action in Maricopa County Superior Court. (Doc. 1-1 at 7-11.)

On May 17, 2024, Defendant timely removed the action to this Court. (Doc. 1.)

On May 21, 2024, Defendant filed a motion to dismiss for lack of personal

---

what is being retained or eliminated from the original complaint. For example, in paragraph four of the original complaint (and still visible in the FAC), Plaintiff alleged that Defendant was a "social media influencer," but in the "amended" bullet point, much of which contradicts the allegations in the original paragraph, that description is omitted. (Doc. 8 ¶ 4.) Nevertheless, other allegations in the FAC still seem refer to Defendant as a social media influencer. (*See, e.g.*, *id.* ¶ 5 ["The parties agreed that Defendant would create social media content."].)

jurisdiction. (Doc. 4.)

On October 11, 2024, the Court granted Defendant's motion. (Doc. 7.) The Court incorporated by reference the analysis in *Beauchamp v. Muise*, 2024 WL 4364058 (D. Ariz. 2024), which dismissed, for lack of personal jurisdiction, a near-identical action by Plaintiff against a New Hampshire-based social media influencer: "The Court has carefully reviewed that analysis, fully agrees with it, and concludes that it compels the same outcome here." (Doc. 7 at 3.) The Court also granted Plaintiff leave to amend but clarified that the amendment deadline was "[w]ithin 14 days of the issuance of this order"—*i.e.*, by October 25, 2024—and specified that "[a]ny changes shall be limited to attempting to cure the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit." (*Id.* at 5.)

On October 28, 2024, Plaintiff filed the FAC. (Doc. 8.) Plaintiff did not attach a redlined version of the pleading as an exhibit. (*Id.*)

On November 12, 2024, Defendant filed the pending motion to dismiss for lack of personal jurisdiction. (Doc. 9.)

On November 25, 2024, Plaintiff filed a response. (Doc. 10.)

On December 10, 2024, Defendant filed a reply. (Doc. 11.)

Neither side requested oral argument.

**DISCUSSION**

I.   Procedural Failures

    A.   **The Parties' Arguments**

Defendant argues that because Plaintiff filed the FAC three days after the amendment deadline and did not seek an extension or provide any explanation or justification for the delay, the SAC "is untimely and should be dismissed on that basis alone." (Doc. 9 at 3.) According to Defendant, "[a]llowing Plaintiff to proceed despite the missed deadline would undermine the Court's authority to enforce compliance with its orders and create undue delay in the proceedings." (*Id.*) Defendant also argues that dismissal is justified based on Plaintiff's failure to comply with the requirement, set forth

both in the October 11, 2024 order and in LRCiv 15.1(a), of attaching a redlined version of the FAC as an exhibit. (*Id.*)

In response, Plaintiff attempts to raise her own procedural argument—that Defendant failed to properly serve her with the motion to dismiss. (Doc. 10 at 1-2.) Plaintiff argues that by emailing her the motion, Defendant violated Rule 5 of the Federal Rules of Civil Procedure. (*Id.* at 1.) In response to Defendant's untimeliness argument, Plaintiff argues that "there was an administrative error that resulted in Plaintiff being treated as an e-filer without her consent. The court's order was emailed to Plaintiff, when it should have been mailed." (*Id.* at 2.) Plaintiff argues that she "made best efforts to comply with the court's order by attempting to file the [FAC] on October 25, 2024, as a new case due to the e-filing issue. However, Plaintiff was instructed by the clerk to file in person, which she did on October 28, 2024." (*Id.*) Citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), Plaintiff argues that "courts have discretion to accept late filings, especially when the delay is caused by issues related to service and does not prejudice the opposing party." (*Id.*) Finally, as for the redlining issue, Plaintiff contends—incorrectly, as discussed in more detail below—that a "compliant" version of the FAC is enclosed as an attachment to her response brief. (*Id.* at 3.)

In reply, Defendant argues that service of her motion through the ECF system complied with Rule 5(b) and that "by registering with ECF, Plaintiff consented to electronic service." (Doc. 11 at 2.) Defendant further argues that Plaintiff has, at any rate, demonstrated actual notice. (*Id.*) Defendant also notes that "since the inception of this case, Defendant has sent Plaintiff every filing via ECF and email, and [Plaintiff] has not raised any objections or issues, until she filed her Response." (*Id.*) Defendant next addresses the untimeliness issue, arguing that Plaintiff's failure to seek an extension for good cause pursuant to Rule 6(b) "undermines her argument" that she made best efforts to comply with the amendment deadline. (*Id.*) Defendant also argues that "the circumstances here do not rise to the level of excusable neglect under *Pioneer*. Courts assess excusable neglect by considering factors such as prejudice, the length of delay, the reason for delay,

and good faith. Plaintiff's explanation—an alleged e-filing issue—is unpersuasive given her knowledge of the deadline and her failure to take alternative action promptly." (*Id.* at 2-3.) Next, Defendant argues that because Plaintiff has not sought leave to file a second amended complaint as required by Rule 15(a)(2), the proposed pleading that Plaintiff provided as an attachment to her response brief is procedurally improper and should be disregarded. (*Id.* at 3.) This impropriety, Defendant argues, "creates confusion, undermines Defendant's procedural rights, and disrupts the orderly administration of justice." (*Id.*)

B. **Analysis**

"Failure to follow a district court's local rules is a proper ground for dismissal." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). However, before dismissing for failure to follow a local rule, "the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* (cleaned up). "This test is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow." *Parker v. Shaw & Lines, LLC*, 2010 WL 1640963, *1 (D. Ariz. 2010) (citation omitted). *See also United States v. Warren,* 601 F.2d 471, 474 (9th Cir. 1979) ("Only in rare cases will we question the exercise of discretion in connection with the application of local rules.").

Plaintiff committed two distinct procedural errors—she filed the FAC after the amendment deadline, and she filed it without providing the required redlined copy indicating how it differed from the original complaint. Although the short delay would not alone warrant dismissal, the failure to comply with the redlining requirement is more serious. The point of that requirement is to enable the opposing party (and the Court) to easily identify the new factual allegations that didn't appear in the earlier version of the complaint, which in turn makes it possible to determine whether those new allegations are

sufficient to cure the deficiencies identified in the earlier dismissal order. Courts in the District of Arizona routinely dismiss amended pleadings for failure to comply with the redlining requirement. *See, e.g.*, *Eldridge v. Schroeder*, 2016 WL 354868, *2 (D. Ariz. 2016) ("The District Court of Arizona routinely denies motions for leave to amend for failure to comply with LRCiv 15.1(a)."); *Salako v. Franklin*, 2025 WL 4475197, *3 (D. Ariz. 2024) ("The Court agrees with Defendants that Plaintiff's motion for leave to amend should be denied. Plaintiff failed to provide a redlined version of her proposed new pleading, as required by LRCiv 15.1(a). Plaintiff is aware of this rule . . . and she has not offered any explanation for her failure to comply in this instance—after Defendants filed a response brief pointing out this omission, Plaintiff declined to file a reply and otherwise failed to take corrective action."). The Court specifically outlined this requirement in the October 11, 2024 order and Plaintiff provides no excuse for non-compliance.[2]

Having considered the relevant factors under *Ghazali*, the Court concludes they support dismissal without prejudice here. Plaintiff's non-compliance with the redlining requirement has thwarted the public's interest in expedited resolution of litigation, has interfered with the Court's ability to manage its docket (*see, e.g.*, footnote 1, *supra*), and has exposed Defendant to a risk of prejudice from further delay. These considerations outweigh the public policy favoring disposition of cases on their merits, and a without-prejudice dismissal is the only feasible alternative to a with-prejudice dismissal.

II.   Personal Jurisdiction

In an abundance of caution, the Court concludes that Defendant is also entitled to dismissal based on the merits of her jurisdictional challenge. In the October 11, 2024 order, which adopted *Muise*'s rationale for dismissing a nearly identical lawsuit that Plaintiff filed against a different New England-based social medial influencer, the Court concluded that Plaintiff failed to satisfy the "express aiming" prong of the purposeful direction test for establishing personal jurisdiction. (Doc. 7 at 3.) The FAC does nothing to change this

---

[2] Plaintiff purports to remedy this error by enclosing a "compliant" document as an attachment to her response brief. (Doc. 10 at 10-18.) However, this document does not contain any redlines, so it does not in fact remedy the error.

conclusion.

First, the FAC realleges many of the same facts that were previously deemed insufficient to create personal jurisdiction—for example, the allegations that Defendant "reached out" to Plaintiff via text (Doc. 8 ¶ 4), that some sort of promotional agreement between the parties existed for roughly two months (*id.* ¶¶ 4-8), that Defendant committed an array of torts by disparaging Plaintiff's products on TikTok (*id.* ¶¶ 32-38), and that this conduct caused harm to Plaintiff's Arizona business (*id.* ¶¶ 22, 27-31). For the reasons identified in *Muise* and adopted in the October 11, 2024 order, such allegations fail to establish personal jurisdiction over Defendant in Arizona.

Second, the FAC's new allegations also fail to establish "express aiming." Although Plaintiff now alleges that "Defendant expressly aimed at her Arizona business" (*id.* ¶ 8), this is a quintessential example of the sort of conclusory legal language that courts need not credit. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The FAC also contains more detailed allegations concerning the alleged financial harm to Plaintiff's Arizona business and provides new calculations that purport to demonstrate that harm. (*Id.* ¶¶ 14, 22-24, 27-31.) But as explained in *Muise*, such a "foreseeable effect alone would not establish purposeful direction." *Muise*, 2024 WL 4364058 at *4. The FAC also alleges that Defendant's TikTok post, "I hope everyone calls the Better Business Bureau," implied "unethical conduct or a breach of professional duties related to Plaintiff's business practices in Arizona." (Doc. 8 ¶ 15.) But this new allegation does not remedy the deficiencies explained in *Muise* and adopted in the October 11, 2024 order. The Better Business Bureau is not an Arizona organization, nor does Defendant's alleged statement target Arizona. Again, harm felt by Plaintiff's Arizona business is not enough. Plaintiff still does not allege—nor do any of Plaintiff's attachments indicate—that Defendant's influencer brand was geared toward Arizona, that her audience was composed of many Arizonans, or that she targeted or even mentioned Arizona in any of her social media posts.

For these reasons, Plaintiff has again failed to establish that Defendant expressly

aimed her conduct at Arizona. Consequently, the Court lacks personal jurisdiction over Defendant.

III.   Leave To Amend

The decision whether to grant leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Leave to amend would be inappropriate here. Plaintiff was already given one opportunity to amend but failed to provide any new factual allegations sufficient to remedy the deficiencies identified in *Muise* and the October 11, 2024 order. It would be futile to provide her with yet another opportunity to amend under these circumstances. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Additionally, as discussed in the October 11, 2024 order, Plaintiff is a former attorney, so it is unclear that she "deserves the grace granted to other *pro se* individuals." (Doc. 7 at 4 n.1, citation omitted.)

…

…

…

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that:

1. Defendant's motion to dismiss (Doc. 9) is **granted**.

2. The FAC (Doc. 8) is dismissed without leave to amend.

3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 10th day of January, 2025.

Dominic W. Lanza
United States District Judge